[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14208

_____

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 16, 2005
THOMAS  K. KAHN
CLERK**

D. C. Case No. 04-20830-CV-MGC

BETTY K AGENCIES, LTD.,

                                        Plaintiff-Appellant,
                                        Counter-Defendant,

                          versus

M/V MONADA, her engines,
tackle, appurtenances, etc., on rem,
TIDAL WAVE, LTD., in personam,

                                        Defendants-Appellees,
                                        Counter-Claimants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 16, 2005)**

Before HULL, MARCUS and HILL, Circuit Judges.

MARCUS, Circuit Judge:

    Appellant, Betty K Agencies, LTD. ("Betty K"), challenges the district

court's <u>sua</u> <u>sponte</u> order dismissing <u>with</u> <u>prejudice</u> its maritime claims against Appellees Tidal Wave Limited ("Tidal Wave") and M/V Monada ("Monada"). Because the district court dismissed the case <u>with</u> <u>prejudice</u> as a sanction for failure to answer a counterclaim and perfect service of process, without finding that Betty K acted with willful or contumacious disregard for court rules, and without finding that lesser sanctions were somehow inadequate, we vacate the district court's Dismissal Order and remand for further proceedings consistent with this opinion.

## I.

Betty K is in the business of transporting marine cargo between Miami and Nassau, Bahamas. In 2003, Betty K entered into an agreement with Tidal Wave to charter the defendant M/V Monada, a cargo vessel. Soon thereafter, and with twenty-seven days remaining in the charter period, the vessel's engine failed, rendering the vessel inoperable for the remainder of the charter period. Betty K requested from Tidal Wave $52,650 in unearned charter hire and $6,051 in advances made to the vessel while in service. Tidal Wave refused to return the requested funds, whereupon Betty K commenced suit in the United States District Court for the Southern District of Florida.

Betty K sued the M/V Monada, <u>in</u> <u>rem</u>, and Tidal Wave, <u>in</u> <u>personam</u>, on

April 7, 2004, and moved for an order directing issuance of a warrant of arrest. The next day, the district court issued a Warrant of Arrest for the vessel, but before the marshal could arrest the vessel, Tidal Wave filed an Emergency Motion stating that "this vessel is voluntarily submitting to the Court's jurisdiction, and the disruption caused by an arrest is not necessary." At an emergency hearing before the district court, Tidal Wave agreed on behalf of the vessel to post an adequate security bond in lieu of arrest in the amount of $65,956.58. On April 29, 2004, the marshal, not surprisingly, returned the arrest warrant unexecuted, explaining: "Defendant posted bond. Court advised not to arrest. Return unexecuted."

On April 14, 2004, Tidal Wave filed and served on Betty K its Answer, Affirmative Defenses, and Counterclaims. It is undisputed that Betty K did not file its Answer to the counterclaim with the clerk of court; the parties dispute whether Betty K served its Answer on Tidal Wave. Betty K claims to have served counsel by hand with an answer to the counterclaim in court at the emergency hearing; counsel for Tidal Wave denies this. No hearing was conducted nor were findings made by the district court as to whether an answer was served on Tidal Wave.

The parties continued to litigate their claims before the district court even

after the date on which Betty K's Answer was due, and no motion to compel an answer or dismiss was ever filed by any party. Indeed, nothing in the record suggests that, during that time, the court or the litigants were aware of Betty K's failure to respond to Tidal Wave's counterclaim. Nevertheless, on July 30, 2004, the district court, sua sponte, entered its terse Dismissal Order stating:

> Plaintiff failed to respond as required by S.D. Fla. L.R. 7.1.C and Fed. R. Civ. P. 12(a)(2). In addition, the Court notes that service was never perfected as to Defendant M/V/ Movada [sic]. After reviewing the record and being otherwise advised of the premises, it is hereby ORDERED AND ADJUDGED that this action is DISMISED WITH PREJUDICE.

No further explanation was offered.

Soon thereafter, on August 5, 2004, Betty K, pursuant to Rule 60(b), timely filed a Motion to Vacate arguing that: (1) the district court mistakenly concluded, based on the docket entry reflecting incomplete service on the Monada, that the vessel was not properly before the court, even though posting the bond established the district court's in rem jurisdiction; and, (2) Betty K committed excusable neglect by failing to file its Answer with the court. Betty K said that, in any event, the draconian remedy of dismissing with prejudice the entire complaint was the wrong remedy. The District Court denied Betty K's Motion to Vacate, citing as its sole reason Betty K's failure to answer Tidal Wave's counterclaim. In its entirety,

4

the order read as follows:

> THIS CAUSE came before the Court upon Plaintiff Betty K
> Agencies, Ltd.'s Motion to Vacate or, Alternatively, to Alter and
> Amend "Final Order of Dismissal and Denying All Pending Motions
> as Moot," (D.E. 30), filed August 5, 2004.  The Court having
> carefully considered the case file and being duly advised, Plaintiff's
> Motion is DENIED.
>
> Plaintiff avers in its Emergency Motion that the response to the
> Defendants' counterclaim was hand delivered at an emergency
> hearing held on April 16, 2004.  Plaintiff's Motion at ¶ 4.  Pursuant to
> Fed. R. Civ. P. 12(a)(2), a party must serve a reply to a counterclaim
> within twenty (20) days after service of the answer.  All papers after
> the complaint required to be answered "shall be filed with the clerk
> where the assigned Judge is chambered either before service or within
> three business days, thereafter." S.D. Fla. L.R. 5.1.B.  Plaintiff failed
> to provide any demonstrable evidence that it has complied with the
> Fed. R. Civ. P. or the S.D. Fla. L.R.  Moreover, the docket does not
> provide any evidence that the Plaintiff filed and served its response to
> Defendants' counterclaim, as required.
>
> It is therefore: ORDERED AND ADJUDGED that Plaintiff's Request
> for Emergency Motion to Stay enforcement of Order is hereby
> DENIED.

Betty K has timely appealed both the Dismissal Order and the Order

Denying Plaintiff's Motion to Vacate.

## II.

We review for abuse of discretion a district court's dismissal for failure to

comply with the rules of court.  Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir.

1985).  Discretion means the district court has a "range of choice, and that its

decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1324 (11th Cir. 2005) (internal quotation marks omitted).

Although the district court nowhere specified the authority upon which it relied to sua sponte dismiss Betty K's case, in these circumstances a court may dismiss a case with prejudice based on two possible sources of authority: Rule 41(b), or the court's inherent power to manage its docket. Rule 41(b) provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him." Fed. R. Civ. P. 41(b). The Supreme Court also has held that "[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs . . . ." Link v. Wabash R.R. Co., 370 U.S. 626, 630, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962).

Although the plain language of Rule 41(b) suggests that a court may act pursuant to that Rule only when dismissing upon the motion of the defendant, and acts only on its inherent authority when dismissing sua sponte, many of our decisions elide this neat distinction. For example, in Hildebrand v. Honeywell,

6

<u>Inc.</u>, 622 F.2d 179, 181 (5th Cir. 1980),[1] the former Fifth Circuit reviewed a dismissal upon motion, but stated that "a court may <u>sua</u> <u>sponte</u> dismiss a case with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure." <u>Accord</u> <u>World Thrust Films, Inc. v. Int'l Family Entm't, Inc.</u>, 41 F.3d 1454, 1456 (11th Cir. 1995) (reversing <u>sua</u> <u>sponte</u> dismissal for failure to comply with court rules, and citing Rule 41(b) as the source of the district court's authority); <u>Lopez v.</u> <u>Aransas County Indep. Sch. Dist.</u>, 570 F.2d 541, 544 (5th Cir. 1978) (affirming <u>sua</u> <u>sponte</u> dismissal and stating that "[u]nder Rule 41(b) of the Federal Rules of Civil Procedure a case may be dismissed with prejudice . . . . [And] [a]lthough the rule is phrased in terms of dismissal on the motion of the defendant, it is clear that the power is inherent in the court and may be exercised <u>sua</u> <u>sponte</u> . . . ."). At least one decision, however, has drawn a clear distinction between the two sources of authority: "[Rule] 41(b) allows a defendant to seek the dismissal of an action . . . . In addition to the authority granted by Rule 41(b), a federal district court possesses the inherent authority to dismiss an action for want of prosecution . . . ." <u>Gonzalez</u> <u>v. Firestone Tire & Rubber Co.</u>, 610 F.2d 241, 247 (5th Cir. 1980).

This much, however, is clear: a dismissal <u>with</u> <u>prejudice</u>, whether on

---

[1] The Eleventh Circuit has adopted as precedent the decisions of the former Fifth Circuit rendered before October 1, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

7

motion or sua sponte, is an extreme sanction that may be properly imposed only when: "(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." World Thrust Films, 41 F.3d at 1456; accord Gratton v. Great Am. Commc'ns., 178 F.3d 1373, 1374 (11th Cir. 1999); Mingo v. Sugar Cane Growers Co-op. of Fla., 864 F.2d 101, 102 (11th Cir. 1989); Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923, 924-25 (11th Cir. 1986); Goforth, 766 F.2d at 1535; Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983); Gonzalez, 610 F.2d at 247; Hildebrand, 622 F.2d at 181; Boazman v. Econ. Lab., Inc., 537 F.2d 210, 212-13 (5th Cir. 1976). Moreover, the harsh sanction of dismissal with prejudice is thought to be more appropriate in a case where a party, as distinct from counsel, is culpable. Gratton, 178 F.3d at 1375.

Thus, for example, in Gratton v. Great American Communications, a panel of this Court found no abuse of discretion where the district court found the plaintiff personally culpable and dismissed the case with prejudice. Id. There, the plaintiff repeatedly flouted discovery rules, destroyed evidence, misidentified a witness, and ignored the court's orders. Indeed, the district court tried lesser sanctions on two occasions before concluding that no sanction but dismissal would cure the harm. Id. By contrast, in Boazman, 537 F.2d at 212-13, a panel of

8

the former Fifth Circuit found that the district court abused its discretion by dismissing a case with prejudice absent some evidence of both contumacious violation of the court's order and a finding that lesser sanctions were not available.

In this case, the district court identified two reasons for the dismissal: (1) Betty K's failure to answer Tidal Wave's counterclaim as required by S.D. Fla. L. R. 7.1.C and Fed. R. Civ. P. 12(a)(2); and (2) Betty K's failure to perfect service on the Monada. Neither justifies dismissal with prejudice.

A.

The first reason offered by the district court for dismissal was Betty K's failure to respond to Tidal Wave's counterclaim in violation of Federal Rules of Civil Procedure 5(d), 12(a)(2), and Southern District of Florida Local Rule 5.1.B.[2]

Rule 12(a)(2) provides that "[t]he plaintiff shall serve a reply to a counterclaim in the answer within 20 days after service of the answer." Fed. R. Civ. P. 12(a)(2). Rule 5(d) provides that "[a]ll papers after the complaint required to be served upon a party, together with a certificate of service, must be filed with the court within a reasonable time after service." Fed. R. Civ. P. 5(d). Local Rule

---

[2] The district court's Dismissal Order cited a violation of S.D. Fla. Local Rule 7.1.C, not Local Rule 5.1.B, as grounds for dismissal. As Betty K noted in its brief, Local Rule 7.1.C regulates service of a memorandum of law in opposition to a motion, and therefore does not control service or filing of a pleading. The court implicitly acknowledged its mistake by referring instead to Local Rule 5.1.B in its Order Denying Plaintiff's Motion to Vacate.

5.1.B, in turn, provides that "[a]ll papers after the complaint required to be served upon a party shall be filed with the clerk where the assigned Judge is chambered either before service or within three business days thereafter . . . . Failure to comply with this rule is not grounds for denial of the motion or dismissal of the paper filed." S.D. Fla. L.R. 5.1.B.

Betty K concedes that it failed to file with the clerk of court an answer to the counterclaim and, as noted, the parties dispute whether Betty K served its Answer on Tidal Wave. But even if we assume that Betty K wholly failed to respond to Tidal Wave's counterclaim, this failure, under the circumstances of this case, did not justify the draconian remedy of a dismissal with prejudice.

In the first place, the district court failed entirely to find that Betty K's failure to answer the counterclaim (which was filed on April 14, 2004) was somehow willful or contumacious, or, for that matter, that lesser sanctions were inadequate to remedy that failure. In fact, the Dismissal Order contains no findings of any sort; it merely identifies the rules Betty K purportedly violated.

Our case law has articulated with crystalline clarity the outer boundary of the district court's discretion in these matters: dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct. See

10

Gratton, 178 F.3d at 1375 (dismissal with prejudice is appropriate "where there is a clear record of 'willful' contempt and an implicit or explicit finding that lesser sanctions would not suffice"); Goforth, 766 F.2d at 1535 ("The legal standard to be applied under Rule 41(b) is whether there is a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.") (internal quotation marks omitted); Boazman, 537 F.2d at 212 ("[D]ismissal with prejudice is such a severe sanction that it is to be used only in extreme circumstances, where there is a clear record of delay or contumacious conduct, and where lesser sanctions would not serve the best interests of justice . . . .") (emphasis added) (internal citations and quotation marks omitted). As we held in Mingo v. Sugar Cane Growers Co-op. of Florida, findings satisfying both prongs of our standard are essential before dismissal with prejudice is appropriate. 864 F.2d 101, 102-03 (11th Cir. 1989). And, although "we occasionally have found implicit in an order the [findings necessary to support dismissal], we have never suggested that the district court need not make that finding." World Thrust Films, Inc., 41 F.3d at 1456 (internal quotation marks and citation omitted).

We rigidly require the district courts to make these findings precisely "[b]ecause the sanction of dismissal with prejudice is so unsparing," Mingo, 864 F.2d at 103, and we strive to afford a litigant his or her day in court, if possible.

11

<u>Flaksa v. Little River Marine Constr. Co.</u>, 389 F.2d 885, 888 (5th Cir. 1968) (recognizing the "importance, except in the most flagrant circumstances, of resorting to sanctions that do not deprive a litigant of his day in court"). Thus, in <u>Mingo</u>, where the district court found that "it would be unfair to defendant to allow this unhappy litigation to drag on longer than it already has [and] the circumstances of this case cry out for such a just, speedy, and inexpensive determination," we nevertheless found an abuse of discretion because this language did not establish that "the trial court reflected upon the wide range of sanctions at its disposal and concluded that none save dismissal would spur this litigation to its just completion." 864 F.2d at 103.

Here, the district court ignored the unambiguous standard that has governed dismissals with prejudice. The Dismissal Order merely recites the rules Betty K purportedly violated, and makes no finding that Betty K's seemingly inadvertent and isolated mistake was willful or contumacious.[3] Moreover, the district court failed to find, explicitly or implicitly, that lesser sanctions were inadequate to correct Betty K's untimely filing. The district court's failure to make either finding was a clear abuse of discretion.

---

[3] In fact, Local Rule 5.1.B, which requires filing papers within three days of service, expressly provides that "[f]ailure to comply with this rule is not grounds for denial of the motion or dismissal of the paper filed." S.D. Fla. L.R. 5.1.B.

Even if we look beyond the Dismissal Order in search of a reason to affirm, we are compelled to reach the same conclusion.  The record, like the Dismissal Order, is devoid of any evidence even remotely suggesting that Betty K acted willfully or contumaciously.  Indeed, it appears from a close review of the record before us that this was Betty K's first and only violation of a court rule.  Tidal Wave itself flatly concedes the absence of any operative facts other than those stated in the Dismissal Order.  Nor does the record indicate that Betty K, rather than its attorney, was in any way responsible for this failure to answer the counterclaim.  Likewise, nothing in the record suggests that lesser sanctions were insufficient to cure Betty K's failure to respond to Tidal Wave's counterclaim.  To the contrary, a violation of Rule 5(d) for failure to file a pleading "generally is corrected by an order to compel filing."  4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1152 (3d ed. 2002); see also Palmquist v. Conseco Medical Ins. Co., 128 F. Supp. 2d 618, 623 (D.S.D. 2000) (noting that a "violation of the rule is generally corrected by an order compelling the filing of the missing pleading"); Biocore Medical Technologies, Inc. v. Khosrowshahi 181 F.R.D. 660, 668 (D. Kan. 1998) (same); Wilson v. United States,  112 F.R.D. 42, 43 (N.D. Ill. 1986) (same).

B.

13

The second reason offered by the district court for dismissing Betty K's case is as unconvincing as the first. The court "note[d] that service was never perfected as to Defendant M/V/ Movada [sic]," but did not explain how Betty K's failure to serve the Monada warranted a dismissal with prejudice.

As we have observed, dismissal with prejudice is a drastic sanction that may be imposed only upon finding a clear pattern of delay or willful contempt and that lesser sanctions would not suffice. World Thrust Films, Inc. v. Int'l Family Entm't, Inc., 41 F.3d 1454, 1456 (11th Cir. 1995); Mingo v. Sugar Cane Growers Co-op. of Fla., 864 F.2d 101, 102-03 (11th Cir. 1989). Here, the district court merely recited the bare fact that Betty K had not yet perfected service on the vessel, and made no finding that Betty K's failure to serve the Monada showed willful contempt for court rules.[4] Nor is there any evidence in the record that would support such a finding. To the contrary, the very evidence on which the district court relied in finding that service was not completed--the U.S. Marshal's unexecuted process--gave the following innocuous explanation: "Defendant posted bond. Court advised not to arrest. Return unexecuted."

The district court also failed to find that lesser sanctions would be

---

[4] Notably, in denying Betty K's Rule 60(b) Motion to Vacate, the district court did not reassert improper service as a basis supporting dismissal.

14

inadequate to correct any defect in service. Indeed, Federal Rule of Civil Procedure 4(m) explicitly prescribes a lesser sanction for failure to complete service: "If service of the summons and complaint is not made upon a defendant within 120 days . . . [the court] shall dismiss the action without prejudice as to that defendant or direct that service be effected . . . ." Fed. R. Civ. P. 4(m) (emphasis added). The district court did not find, nor could it have found on this record, that lesser sanctions were insufficient to remedy unexecuted service as to the Monada.

But even if we look deeper into the matter and attempt to divine the district court's unstated rationale, we remain unable to discern how failure to serve the Monada under the peculiar circumstances of this case could warrant a dismissal with prejudice. As for the suggestion that Betty K's failure to perfect service on the Monada deprived the court of jurisdiction, we note at the outset that if the district court actually lacked jurisdiction over the vessel, the court would have lacked the power to dismiss Betty K's claims against the vessel with prejudice. See Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126, 1133 (11th Cir. 1994) (holding that a district court's order of dismissal with prejudice was a nullity because the court lacked jurisdiction); Boudloche v. Conoco Oil Corp., 615 F.2d 687, 688-89 (5th Cir. 1980) ("Since the court lacked jurisdiction over the action, it had no power to render a judgment on the merits").

15

But putting this aside, the more fundamental point is that the district court was not deprived of in rem jurisdiction by Betty K's failure to serve process on the vessel after Tidal Wave posted a release bond. In general, "a valid seizure of the res is a prerequisite to the initiation of an in rem" action. Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 84, 113 S.Ct. 554, 557 (1992). Typically, in admiralty cases, seizure of the res is accomplished by arresting the vessel in dispute. See Supp. Adm. & Mar. R. C(3). But posting a release bond also brings the res within the court's jurisdiction:

> [T]he bond . . . in a suit in rem . . . bec[omes] the substitute for the property; and the remedy of the libellants, in case they prevail[] in the suit in rem for condemnation, [is] transferred from the property to the bond or stipulation accepted by the court as the substitute for the property seized.

United States v. Ames, 99 U.S. 35, 42 (1878); see also Continental Grain Co. v. Federal Barge Lines, Inc., 268 F.2d 240, 244 n.6 (5th Cir. 1959) ("[S]tipulation for value is a complete substitute for the res, and the stipulation for value alone is sufficient to give jurisdiction to a court because its legal effect is the same as the presence of the res in the court's custody") (emphasis added) (internal quotation marks and citation omitted) aff'd, 364 U.S. 19 (1960). As we explained in Industria Nacional Del Papel, CA. v. M/V Albert F, 730 F.2d 622 (11th Cir. 1984): "The effect of [posting] the release was to transfer the lien from the ship to

16

the fund the security represented. 'The lien against the ship [was] discharged for all purposes and the ship cannot again be liable in rem for the same claim.'" Id. at 625-26 (alteration in original) (quoting G. Gilmore & C. Black, The Law of Admiralty, § 989 at 651 (1st ed. 1957)); accord United States v. Ohio Valley Co., Inc., 510 F.2d 1184, 1190 (7th Cir. 1975) (stipulation for value "was a complete substitute for the res, and thereby represented the property against which the government had the right to seek to fulfill its judgment") (citing J.K. Welding Co. v. Gotham Marine Corp., 47 F.2d 332 (S.D.N.Y. 1931)).

Here, since Tidal Wave posted a release bond after an emergency hearing before the district court, the relevant res to be adjudicated, the bond, was properly before the district court when it issued its Dismissal Order. Service of process on the vessel in these circumstances could serve no additional purpose.

Service of process in rem serves two functions: it brings the res within the court's control and it provides fair notice to interested parties. See Supp. Adm. & Mar. R. C(3), C(4); Republic Nat'l Bank, 506 U.S. at 87-88, 113 S.Ct. at 559 (noting that the two concerns of *in rem* jurisdiction are "enforceability of judgments and fairness of notice to the parties"). Posting a release bond obviated concerns of enforceability. See Ames, 99 U.S. at 42; Industria Nacional, 730 F.2d at 625-26; Continental Grain, 268 F.2d at 244 n.6. Also, Tidal Wave--the only

17

party with an interest in the bond--received actual notice of Betty K's claims against the vessel in time not only to defend its interests, but to avoid the vessel's arrest altogether. Additional formal notice was therefore not required. See Supp. Adm. & Mar. R. E(5)(a) ("[W]henever . . . process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security . . . ."); Wong Shing v. M/V Mardina Trader, 564 F.2d 1183, 1187 (5th Cir. 1977) ("The in rem process . . . is based upon the presumption that the fact of seizure of a vessel alone will result in prompt, actual notice to all interested parties, without the necessity of formal personal notice.") (quoting The Mary, 9 Cranch (13 U.S.) 126, 3 L.Ed. 678 (1815)).

Thus, to the extent the district court based its dismissal on the erroneous conclusion that its in rem jurisdiction depended on service of process on the vessel, the district court abused its discretion. See Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005) (the district court's discretionary "decision will not be disturbed as long as it . . . is not influenced by any mistake of law") (internal quotation marks omitted).[5]

---

[5] Finally, even if service of process were somehow required on the M/V Monada, dismissal with prejudice would still have been an abuse of the district court's discretion. First, the failure to perfect service on the Monada would not justify dismissal of Betty K's claims against Tidal Wave because Rule 4(m) authorizes a district court to dismiss only "as to that defendant" on whom the plaintiff failed to serve process. Fed. R. Civ. P. 4(m). Moreover, Rule 4(m) authorizes a district court to dismiss only without prejudice for failure to serve process: "If

18

We, therefore, vacate the district court's Dismissal Order,[6] and remand for further proceedings consistent with this opinion.[7]

VACATED AND REMANDED.

---

service of the summons and complaint is not made . . . the court . . . shall dismiss the action without prejudice." Fed. R. Civ. P. 4(m). Finally, the district court dismissed the Betty K's complaint only 114 days after its complaint was filed, even though Rule 4(m) prohibits dismissal for failure to serve process if fewer than 120 days have elapsed since the plaintiff filed its complaint. Fed. R. Civ. P. 4(m); Henderson v. United States, 517 U.S. 654, 661-62, 116 S.Ct. 1638, 1644 (1996) ("[C]omplaints are not to be dismissed if served within 120 days . . . .").

[6] Betty K also appeals from the district court's denial of its Motion to Vacate brought pursuant to Federal Rule of Civil Procedure 60(b). Since we have vacated the district court's initial Dismissal Order, Betty K's appeal from the denial of its Rule 60(b) motion is moot. See Urfirer v. Cornfeld, 408 F.3d 710, 727 (11th Cir. 2005).

[7] On August 23, 2004, the district court, on Tidal Wave's motion, directed the clerk to relinquish the vessel's security bond. On remand, the district court should permit Betty K to seek a new arrest warrant for the Monada or allow the vessel to avoid arrest by re-posting an appropriate bond.