[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12187
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cv-03030-LSC

SANDI N. JOHNSON,

                                                  Plaintiff-Appellant,

versus

ALABAMA DEPARTMENT OF HUMAN RESOURCES,
a political sub-division of the State of Alabama,
ANGELA MCCLINTOCK,
in her official and individual capacity,
MICHELLE SHELTON,
in her official and individual capacity,

                                                  Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 31, 2013)

Before WILSON, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Sandi N. Johnson appeals the district court's grant of summary judgment in favor of the Alabama Department of Human Resources (ADHR), Angela McClintock, and Michelle Shelton (collectively, the defendants) on her employment discrimination action brought under 42 U.S.C. § 1983.  She argues that the district court erred in finding that she did not proffer sufficient evidence of intentional gender discrimination to survive summary judgment.  Specifically, she argues that: 1) there was sufficient evidence of gender discrimination based on gender stereotypes regarding a pregnant woman's ability to work and 2) the district court overlooked circumstantial evidence suggesting gender discrimination was present.

## I. BACKGROUND

ADHR hired Johnson as a social case worker for the Jefferson County Department of Human Resources (JCDHR) on May 11, 2009.  Johnson was hired as a probationary employee.  When she was hired she was pregnant.  She informed her training supervisor and was told that there would not be a problem.

After a training period, on about August 24, 2009, Johnson reported to work at the child abuse/neglect unit.  Angela McClintock was the Assistant Director for JCDHR.  Michelle Shelton supervised the child abuse/neglect unit.  According to

2

Johnson, when she first reported to the child abuse/neglect unit, Shelton remarked "oh no, they did not send me another pregnant one."

Shelton had concerns about Johnson's work performance. Specifically, Johnson "failed to submit cases closures during the week of 09/21/09." Shelton met with Johnson on September 28, 2009, "to discuss her failure to close cases, transfer cases timely and properly attempt first victim contacts." Shelton also received a written letter of complaint about Johnson and was informed that on October 1, 2009, "Johnson reportedly called the complainant on the telephone and cursed and yelled at the complainant about the letter."

Johnson alleges that she "did [her] job in a satisfactory manner." She asserts that this is demonstrated by the fact that she "never received any warnings, written reprimands, or suspensions" and "received a Meets Standards on [her] Probationary Performance Appraisal for May 11, 2009 to November 10, 2009." The Performance Appraisal indicates that Shelton awarded Johnson a score that warrants a "Meets Standards" appraisal, but Shelton marked the "Partially Meets Standards" box. Johnson only scored a 16.66 out of 40 for responsibility. In the "Disciplinary Actions" section, the Performance Appraisal indicated that there had been no warnings, reprimands, or suspensions, but referred to the "attached letter of termination."

On October 2, 2009, Shelton and McClintock told Johnson that she was not being recommended for permanent employment. Johnson was given the option to resign or be terminated and she chose termination. Johnson claims that at the meeting McClintock stated that Johnson "was not able to 'keep up with the work' due to [her] pregnancy." Johnson also alleges that McClintock said that it was best for the JCDHR not to make Johnson a permanent employee because Johnson would need to take maternity leave soon.

Shelton maintains that during the period she supervised Johnson, the only discussion about Johnson's pregnancy was "when she would be expected to start her leave" and that there were no conversations about how Johnson's pregnancy affected "her job duties or performance." McClintock stated that "[a]t no time during the [October 2nd] meeting was the fact that [Johnson] was pregnant mentioned in regards to her ability to do the job." In fact, during this period three other members of the child abuse/neglect unit were pregnant and performed their job well.

On July 23, 2010, Johnson filed a "General Complaint Form for Pro Se Litigants" against "Jefferson County Department of Human Resources and the State of Alabama." She alleged that she was "discriminated against due to [her] pregnancy" and that "statements were made in concern of [her] pregnancy and the effect that it had on [her] duties by [her] supervisor [and] the assistant director."

4

The district court issued an Order treating the application "as a complaint under one or more of the federal civil rights acts," but requiring that "an amended complaint, complying with the Federal Rules of Civil Procedure" be filed "within 30 days from the date hereof . . ., failing which this cause shall be dismissed for want of prosecution." When Johnson failed to comply, the judge issued another Order dismissing the action "for want of prosecution." On the same day, counsel for the Plaintiff entered an appearance with the Court and the following day counsel filed a Rule 60 motion seeking to vacate the judge's dismissal. This motion was denied because the court found no "reason justifying relief from an order that was completely and transparently promised if plaintiff did not timely amend." Johnson did not appeal.

The action now before us on appeal was filed on November 8, 2010. Johnson claimed that the defendants discriminated against her on the basis of gender and pregnancy in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. The district court granted summary judgment in favor of the defendants. The court concluded that Johnson had "not proffered admissible evidence that Defendants terminated her for any gender-related reason or stereotype aside from the pregnancy itself" and that there was no evidence that there was the type of pregnancy discrimination that would support a gender discrimination claim.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263–64 (11th Cir. 2010). "Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 556 (11th Cir. 1997) (per curiam).

"In any § 1983 action, a court must determine whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States." Glenn v. Brumby, 663 F.3d 1312, 1315 (11th Cir. 2011) (quotation marks omitted). Here, the question is whether Johnson's termination violated the Equal Protection Clause of the Fourteenth Amendment. "[W]e have recognized an equal protection right to be free from employment discrimination" based on gender. See e.g., Williams v. Consol. City of Jacksonville, 341 F.3d 1261, 1268 (11th Cir. 2003). Johnson argues that her termination violated this right because "she was terminated based on a stereotype about the capacity of a pregnant woman to do a job."

The Supreme Court has clearly stated that not every classification concerning pregnancy is a sex-based classification under the equal protection clause. See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 271, 113 S.

6

Ct. 753, 760 (1993); Geduldig v. Aiello, 417 U.S. 484, 496 n.20, 94 S. Ct. 2485, 2492 n.20 (1974).  The Court has also clearly stated that discrimination on the basis of a gender stereotype is a sex-based discrimination.  See Price Waterhouse v. Hopkins, 490 U.S. 228, 250, 109 S. Ct. 1775, 1790–91 (1989); see also Glenn, 663 F.3d at 1316–18.  Johnson's claim lies at the intersection of these two rules.  Claims like Johnson's may allege a type of pregnancy classification or gender stereotype discrimination that amounts to gender discrimination under the equal protection clause.  They may allege neither.

However, in Johnson's case it is unnecessary to make this determination.  "When reviewing a grant of summary judgment, [we] may affirm if there exists any adequate grounds for doing so, regardless of whether it is the one on which the district court relied."  Sharp v. Fisher, 532 F.3d 1180, 1183 (11th Cir. 2008).  In this case, we can affirm the district court's grant of summary judgment in favor of the defendants based on res judicata, an argument raised by the defendants before the district court.

The doctrine of res judicata "bars the filing of claims which were raised or could have been raised in an earlier proceeding."  Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999).  "Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court

7

of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." Id. Each of these elements is present here.

The only element of res judicata that Johnson disputed in her opposition to summary judgment was whether there is a final judgment on the merits. Johnson's prior complaint was dismissed for want of prosecution because Johnson had not complied with the district court's prior order. Rule 41(b) permits an involuntary dismissal of an action, on a defendant's motion, if a plaintiff fails to prosecute or to comply with a court order. Fed. R. Civ. P. 41(b). A dismissal under Rule 41(b) or any other dismissal "—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits" unless "the dismissal order states otherwise." Id. Although the dismissal was not on a defendant's motion, it may still be considered a dismissal under Rule 41(b), in which case the presumption that the dismissal was an adjudication on the merits would apply. See Brutus v. IRS, 393 F. App'x. 682, 683 (11th Cir. 2010) (citing Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005)). Even if this dismissal is not a dismissal under Rule 41(b), the presumption still applies. See Costello v. United States, 365 U.S. 265, 286–87, 81 S. Ct 534, 545 (1961) (holding that "a sua sponte dismissal by the Court for failure of the plaintiff to comply with an order of the Court" should operate as an adjudication on the

8

merits because "the defendant has been put to the trouble of preparing his defense because there was no initial bar to the Court's reaching the merits"). Because the dismissal order did not state otherwise, the prior dismissal "operates as an adjudication on the merits." See Fed. R. Civ. P. 41(b).[1]

All of the other elements of res judicata are clearly present. The decision was rendered by a court of competent jurisdiction. There is privity between the ADHR, McClintock, and Shelton, sued by Johnson in the present case, and the State of Alabama and the JCDHR, sued by Johnson in the previous case. The defendants' "interests [were] adequately represented" by the State of Alabama and the JCDHR because those parties had the "same interest" to defend against claims arising out of Johnson's termination of employment with the JCDHR. See EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1286 (11th Cir. 2004). Finally, the same cause of action was involved in both cases because both cases arise "out of the same nucleus of operative fact" and "is based upon the same factual predicate." See Ragsdale, 193 F.3d at 1239 (quotation marks omitted). Therefore, Johnson's claim is barred by res judicata.

### III. CONCLUSION

---

[1] This conclusion is further supported by the district court's reference to the prior dismissal as a "dismissal with prejudice" in its subsequent order denying Johnson's Rule 60 motion to set aside the dismissal.

As all four elements of res judicata are satisfied, we affirm the district court's order granting the defendants' motion for summary judgment.

**AFFIRMED**